## HEWITT, Appellant, v. PRICE et al.

### Division Two, May 14, 1907.

1. **JURISDICTION: Suit on Note: Equitable Counterclaim Affecting Real Estate.** To a suit for the balance due on a note, brought after the deed of trust on land, situated in another county, given to secure the note, had been foreclosed and the land bought by plaintiff (the payee) and the amount of his bid credited on the note, it is competent for the makers to set up an equitable defense, ask for affirmative relief, plead that the deed of trust was fraudulently foreclosed and ask to redeem, and the court has jurisdiction to hear and determine that defense. The counterclaim is a cause of action arising out of the contract by the petition made the basis of plaintiff's suit, and the statute makes such a counterclaim a defense which the defendant may set up in his answer. Title is merely incidental to the main controversy in such case, and section 564, Revised Statutes 1899, does not apply.

2. **DEED OF TRUST: Wrongful Foreclosure: Decree.** A court of equity cannot by its decree find that the value of the land at the date of the trustee's sale was so much, direct that that sum be credited on the mortgage note, and cancel the note, and decree that the purchaser retain the land. If the foreclosure sale was valid, the purchaser is entitled to the land, whether the amount he paid for it was equal to the mortgage debt or

not; if it was invalid, because of informality or by reason of fraud perpetrated by the purchaser, it should be set aside. But the purchaser cannot be compelled to pay a fixed sum for the land.

3. ————: ————: **Burden.** Where it is sought to set aside a foreclosure sale under a deed of trust, the burden of proof rests upon the party charging fraud and false representation.

4. ————: ————: **Decree.** If the foreclosure sale under a deed of trust on land was unfair and surrounded by a state of facts which shows to the satisfaction of the chancellor that to permit it to stand would work a fraud upon the rights of the mortgagors, then the sale should be set aside and the parties placed in the position they occupied before the sale took place, or at the election of the mortgagors the sale may be set aside upon condition that the mortgage debt be fully paid.

5. ————: ————: **Value of Other Land.** To determine the value of the land sold under deed of trust, the value or selling price of other land may be shown by comparison; but the location and character of such other property should be similar, and the sales therof should be near in point of time to the time towards which the inquiry as to the value of the property in dispute is directed.

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds*, Judge.

Reversed and remanded.

*H. S. Miller* and *S. W. Moore* for appellant.

(1) The trial court was without jurisdiction to hear and determine the issues and matters set up in defendants' answer affecting the title to real estate. R. S. 1899, sec. 564; 17 Ency. Pl. and Pr., 670; 12 Ency. Pl. and Pr., 135; 28 Am. and Eng. Ency. Law (1 Ed.), 201; Gray v. Marshall, 66 Mo. 123; Henderson v. Henderson, 55 Mo. 534; Railroad v. Mahoney, 42 Mo. 469; Bassett v. Fortin, 30 Minn. 27; Brown v. Turner, 113 Mo. 27; Morris v. Clair, 132 Mo. 232; Overton v. Overton, 131 Mo. 559; Hardware Co. v. Horn, 146 Mo. 129, 65 Mo. App. 200; Nearen v. Bakewell, 110 Mo. 642, 40 Mo. App. 625; Hanna v. Land Co., 126 Mo. 1. (2) The

findings of the court were not sufficient to sustain the decree. Robinson v. McCune, 128 Mo. 577. (3) The court erred in admitting testimony as to how much the striking of mineral at Spurgeon had raised the value of that and neighboring land, the same not being situated in the neighborhood of the land in question. Cummins v. Railroad, 63 Iowa 397; Daignault v. Woonsocket (R. I.), 28 Atl. 346; Standish v. Washburn, 21 Pick. (Mass.) 237; Railroad v. Splitlog, 45 Kan. 68; Huntington v. Attrill (N. Y.), 23 N. E. 544; Muller v. Railroad, 23 Pac. 265; Warden v. Railroad, 78 Mo. App. 664.

*Cole, Burnett & Moore* for respondents.

(1) The trial court had jurisdiction to hear and determine the issues made by defendants' answer in the nature of an equitable counterclaim. Carson v. Buckstaff, 77 N. W. 670; Ainsworth v. Bowen, 9 Wis. 348; Vilas v. Mason, 25 Wis. 310; Hay v. Short, 49 Mo. 139; Gordon v. Bruner, 49 Mo. 570. The plaintiff, in filing his reply and defending against defendants' equitable counterclaim, thereby submitted to the jurisdiction of the court. Real Estate Co. v. Lindell, 133 Mo. 395; dissenting opinion in Fields v. Maloney, 78 Mo. 172, approved in Sterns v. Railroad, 94 Mo. 317; State ex rel. v. Smith, 104 Mo. 661; Hughes v. McDivitt, 102 Mo. 83. (2) The statute requiring suits affecting title to real estate to be brought in the county within which the real estate is situated, applies only to cases in which the title to the land is the subject of the controversy, and in which the judgment will operate directly on the title, and not to those cases where the title to land may may be merely a subject of collateral inquiry, or in which the judgment will only affect the title incidentally or collaterally. State ex rel. v. Dearing, 180 Mo. 62; Heman v. Wade, 141 Mo. 598; Price v. Blankenship,

144 Mo. 203; Wheeler v. Dalton, 158 Mo. 323; Vandergrif v. Brock, 158 Mo. 681; Davis v. Watson, 158 Mo. 192; Granitoid Co. v. Klein, 170 Mo. 225; Klingelhoefer v. Smith, 171 Mo. 455; Cox v. Barker, 150 Mo. 424; Porter v. Railroad, 175 Mo. 96. An action for misconduct in executing power of sale in a mortgage is transitory. Rogers v. Barnes, 169 Mass. 179. (3) An equitable defense may be made, though land not within the jurisdiction of the court may be affected by the decree. DeKlyn v. Watkins, 3 Sandf. Ch. 185; Davis v. Morris, 76 Va. 21; Lewis v. Darling, 57 U. S. 1; Enos v. Hunter, 9 Ill. 211. In causes in equity, jurisdiction of the persons of the parties gives the court jurisdiction to proceed to final decree, and compel them to do equity. This jurisdiction may be exercised to restrain or control the parties respecting lands beyond the territorial jurisdiction of the court, and in a proper case compel a transfer of title. Baker v. Rockabrand, 118 Ill. 365; Carroll v. Lee, 3 Gill & J. 504; Wood v. Warner, 15 N. J. Eq. 81; Shattuck v. Cassidy, 3 Edw. Ch. 152; Phelps v. McDonald, 99 U. S. 298; Mead v. Merritt, 2 Paige Ch. 402. (4) The findings of the court were amply sufficient to support the decree. Robinson v. McCune, 128 Mo. 587; Sheridan v. Nation, 159 Mo. 27. (5) The court committed no error in the admission of testimony. State v. Robb, 90 Mo. 30; State v. Nelson, 101 Mo. 460; Young v. Smith, 25 Mo. 341; Dunn v. Altman, 50 Mo. App. 231.

FOX, P. J.—This cause is now before this court upon appeal by the plaintiff from a judgment and decree of the Barton Circuit Court. The origin of the controversy may thus be briefly stated:

On July 30, 1891, the defendants, S. C. Price and Clara A. Price, executed their promissory note to the plaintiff for nine hundred and forty dollars, due May 1, 1892, drawing interest at the rate of eight per cent

per annum. This note was executed for the balance of the purchase money for an undivided interest in certain lands situate in Newton county, Missouri, which was conveyed by the plaintiff to the defendants. To secure the payment of said note the defendants on the date of the execution of the note executed a deed of trust to Lee D. Bell, trustee, named in the deed of trust; the interest was paid on said note to January 1, 1894. On August 31, 1898, said note not having been fully paid and satisfied, at the request of the plaintiff the trustee sold the land. At the trustee's sale the plaintiff became the purchaser for the sum of three hundred and eighty-five dollars; the amount of the purchase price at said trustee's sale, less the cost of foreclosing the deed of trust, was credited upon the note executed by the defendants, which amount was $366.80. On August 29, 1899, the plaintiff, J. A. Hewitt, appellant herein, instituted his suit in the circuit court of Jasper county, Missouri, for the recovery of the balance due upon said note, which was executed in July, 1891. Upon application of defendants the venue of said cause was changed to the circuit court of Barton county, and on December 6, 1900, the plaintiff and appellant herein filed his amended petition, upon which the cause was tried. The petition substantially alleged the date of the execution of the note by the defendants, enumerating the credits to which the defendants were entitled and averring that the remainder of the note together with interest was due and unpaid, and prayed for judgment.

The answer of the defendants admitted the execution of the note sued upon, but denied that the credits to which the defendants were entitled were correctly alleged in the petition. Then follows what defendants denominate in their brief an equitable counterclaim, in which it is sought to obtain affirmative equitable relief. We deem it unnecessary to burden this opinion with a reproduction of the answer in full, but shall be

content with a brief statement of the facts alleged in the answer upon which the respondents predicate their right to the relief sought.

It is alleged in the answer that fraud was practiced upon the defendants and the fact that the deed of trust to secure the payment of the note in the suit was to be foreclosed was concealed from them and they were misled by certain statements of the plaintiff, J. A. Hewitt. First, it is alleged that the price brought at the sale was grossly inadequate and that the defendants had no notice that the sale was going to take place. Second, it is alleged in the answer that the defendant, by reason of an injury received, was incapacitated and unable to attend to business, and that the plaintiff about the 15th of August, 1898, visited the defendant, S. C. Price, and tendered him his sympathy and informed him that he had taken no proceedings to foreclose the deed of trust and that no sale was to be made, when in fact it is averred that the plaintiff at that time and a long time prior thereto had taken steps to foreclose said deed of trust and that the foreclosure proceeding was then pending. It is averred that had he not been misled by the representations of the plaintiff, he or some one else representing him would have been present at the sale, and had it not been for these facts the property would have brought more than enough to have paid the note. It is also alleged that the defendants were not apprised of and did not learn of said sale or the fact that it would take place in time to give bond for the redemption of the land as described in said deed of trust, as was provided by the statutes of this State, sections 7079 and 7080, Revised Statutes of 1889.

The reply of the plaintiff to the new matter set out in the answer consisted of a general denial.

We deem it unnecessary to set out in detail the testimony of the plaintiff and defendants upon the issues as presented by the pleadings. With the views as en-

tertained by this court as to the decree entered in this cause, it is sufficient to say that the court heard testimony upon the issues presented and that upon some of the material allegations contained in the answer there was a conflict in the testimony. As to where the burden of proof rests where it is sought to invalidate a transaction by charge of fraud, will be given attention during the course of the opinion.

Upon the retrial of this cause we are unable to say what testimony may be developed, therefore we shall not undertake upon the disclosures of the record upon this appeal to make a finding of the facts. There will be ample time in which to review all testimony and announce our conclusions as to the sufficiency of it and award such relief as the parties may be entitled to when this cause reaches here upon a decree in conformity with the law applicable to cases of this character.

This cause was submitted to the court and on the 21st day of September, 1901, during the session of the Barton Circuit Court, the following interlocutory decree was rendered:

"Now at this day come all the parties, plaintiff and defendants, in the above-entitled cause, in person as well as by their respective attorneys, and announce ready for trial; and a jury being waived, the issues are submitted to the court. Whereupon, after hearing the pleadings read and hearing the evidence and argument of counsel, the court doth find the following to be the facts in this case:

"On the 30th day of July, 1891, the above-named defendants executed and delivered to the above-named plaintiff their promissory note, now sued on in this case, whereby they promised, for value received, to pay to plaintiff or order, the sum of nine hundred and forty dollars on the first day of May, 1892, together with interest thereon from date at the rate of 8 per cent per annum; and, for the purpose of securing the payment

of said note, the defendants at the same time executed and delivered to plaintiff their certain deed of trust, in the usual form, where they conveyed to Lee D. Bell, as trustee, an undivided one-third of the following described real estate, situate in Newton county, Missouri, to-wit: South half of the northwest quarter, and southwest quarter of the northeast quarter, and west half of the northeast quarter of the southeast quarter, and six acres in the east half of the northeast quarter of the southwest quarter—all in section fifteen, township twenty-six, range thirty-two, with full power in said trustee to sell said real estate, in case of default in the payment of said note, for the purpose of satisfying the same. Defendants paid the interest on said note up to January 1, 1894, but no other or further payment was ever made thereon. On August 31, 1898, pursuant to the terms and provisions of said deed of trust, and at the request of the plaintiff, said trustee sold said real estate at public auction to plaintiff at and for the sum of three hundred and eighty-five dollars, and executed and delivered to him a deed conveying to him the real estate above described. The reasonable costs attending said trustee's sale were $18.20, leaving the net proceeds of said sale to be applied to the payment of said note, $366.80. At the time of said sale said undivided one-third of said real estate was reasonably worth the sum of thirteen hundred and fifty dollars, and that sum is its present reasonable value. Neither of the defendants was present at said sale, was not represented thereat, and had no knowledge thereof; if they had been present, or had knowledge thereof, they would have caused said real estate to bring its reasonable value; they were kept in ignorance of said sale, and by plaintiff led to believe it was not going to take place at the time it did; and they ought now to be permitted to redeem said real estate by paying to the plaintiff the full amount due him on said note, which the court finds (excluding the

net proceeds of said sale) now to be fifteen hundred and twenty dollars and seventy cents.

"It is therefore ordered and decreed by the court that the defendants pay into the hands of the clerk of this court for the plaintiff, on or before the 21st day of October, 1901, said sum of fifteen hundred and twenty dollars and seventy cents; together with interest thereon from this date at the rate of eight per cent per annum till date of such payment; and that, if such payment be made, the plaintiff shall, on or before the 31st day of October, 1901, deposit with the clerk of this court, for the defendants, a quitclaim deed, executed by himself and wife, conveying to defendant, S. C. Price, all the right, title and interest which he acquired by virtue of said trustee's deed. It is the intention of the court in making the foregoing orders and decrees, to restore the plaintiff and the defendant, S. C. Price, to the position of tenants in common (defendant owning said undivided one-third, and plaintiff the other undivided two-thirds), just as they stood prior to said trustee's sale, and reserving to each any and all rights to have an accounting as to the rents, profits, insurance, repairs, improvements and taxes, as fully as though no trustee's sale had been had; and this decree shall in no way interfere with or preclude any such accounting.

"It is further ordered by the court that further proceedings herein be postponed to the next term of this court, at which time final judgment will be rendered herein."

On the 21st day of January, 1902, during the January term of the Barton Circuit Court, the court entered its final decree. In the final decree the court simply repeats the finding of the facts as stated in the interlocutory decree heretofore set out and also restates the interlocutory decree. It then proceeds to enter the final decree, which is as follows:

"And it now appearing to the court that the de-

fendants duly complied with said order of this court by paying into the hands of the clerk of this court, for the plaintiff, the amount of money ordered to be by him paid and within the time directed; and it now appearing to the court that plaintiff has failed and refused, and still fails and refuses, to comply with said order of this court directing him to deposit with the clerk a quitclaim deed for defendant, it is therefore by the court now finally adjudged, ordered and decreed as follows:

"Plaintiff may and shall keep the land above described at its reasonable value on the date of said trustee's sale, which the court found and now finds to be thirteen hundred and fifty dollars, and credit defendants therewith on their said indebtedness to plaintiff. And the court further finds that the amount due from defendants to plaintiff at the date of said sale was twelve hundred and ninety dollars and ninety-three cents, so the difference between the amount of said indebtedness and the value of said land was, at the date of said sale, fifty-nine dollars and seven cents. The court further orders and adjudges that the defendant have and recover of and from plaintiff said difference, to-wit, fifty-nine dollars and seven cents; and that plaintiff pay all costs by him made in this case, and that defendants pay all costs by them made in this case. It is further ordered that upon payment by defendant of the cost so adjudged against them the clerk of this court shall pay over to them the amount of said money by them heretofore deposited with him."

In due time plaintiff filed his motion to set aside the finding, judgment and decree of the court in said cause, and prayed the court that he be granted a new trial, which said motion for a new trial was by the court overruled. From the decree and judgment rendered in this cause plaintiff in due time and proper form prosecuted his appeal to this court and the record is now before us for consideration.

OPINION.

The record in this cause discloses numerous assignments of errors as ground for the reversal of this judgment. We will treat of the complaints of appellant and give them such consideration as in our opinion their importance requires.

I.

It is insisted by learned counsel for appellant that the trial court had no jurisdiction to try this cause because the matters and things stated in the respondents' answer affect the title to real estate which was not located in Jasper county, where the suit was instituted, nor in Barton county, where the cause was transferred by order of change of venue and where it was finally tried, but that the land, the title of which is sought to be affected by respondents' answer, is located in Newton county. The insistence of appellant is that the respondents' answer sets up an equitable defense and also prays for affirmative relief, which, under the Code, is in effect a cross-bill for affirmative relief. This is true and in our opinion there can be no doubt but what the legal effect of such an answer was to convert this suit into an equitable proceeding. [Dunn v. McCoy, 150 Mo. 548.]

It being conceded that the answer of respondents seeks affirmative relief by which the title to real estate would be affected, it is earnestly insisted by appellant that our statute which provides that "suits for the possession of real estate, or whereby the title thereto may be affected, shall be brought in the county in which such real estate, or some part thereof, is situate" (R. S. 1899, sec. 564), deprived the Barton Circuit Court of jurisdiction to hear and determine the issues presented by respondents' answer. Upon this proposition we will say that if this suit is to be viewed as simply one in chancery, to cancel the trustee's deed which

conveyed the title to the land in Newton county to the appellant and leave out of consideration the nature and character of the suit as made by the pleadings in the case, it might very properly be regarded as a local action and therefore should have been brought in the county where the land is situated, as provided by section 564, above mentioned; but on the other hand, if we consider the answer or cross-bill as stating but a part of the contract which was entered into between appellant and respondents, and that the other part thereof is stated in the petition, and that the two when considered together constitute the real and entire transaction between the parties, then quite a different conclusion may be reached. Our Code has made very liberal provisions respecting the settlement of controversies between litigants and has made ample provision where suits are brought, for the defendants by way of cross-bill or counterclaim to assert every right to which they may be entitled connected with the subject-matter of the cause of action alleged in the petition. Section 604, Revised Statutes 1899, provides that "the answer shall contain a general or special denial of the allegations of the petition and a statement of any new matter constituting a defense or counterclaim." Section 605 provides: "The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of any of the following causes of action: First, a cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action; second, in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action. The defendant may set forth by answer as many defenses and counterclaims as he may

have, whether they be such as have been heretofore denominated legal or equitable, or both.''

It will be observed that the first section as above quoted requires the defendant to plead any new matter or counterclaim he may have to the cause of action stated in the petition, and the second section defines what the defenses or counterclaims may consist of which the former requires to be pleaded, and one of them is a cause of action arising out of a contract or transaction set forth in the petition as the foundation of plaintiff's claim or connected with the subject of the action. In our opinion the respondents' defense and counterclaim clearly fall within the provisions of this section. The deed of trust in pursuance of which the sale of respondents' land was made, concerning which they now by their answer seek relief, was directly and intimately connected with the note in this controversy upon which the plaintiff predicates his cause of action. The execution of the note and the deed of trust must be considered together and constitute the entire transaction between the parties and it was by reason of the plaintiff being the legal holder of the note upon which he brought suit which entitled him to request the sale and have the land sold in payment of such note. In our opinion the respondents had the right to set up the equitable defense and ask for affirmative relief, and it is very questionable, if they had failed to make such defense in an action upon this note, whether or not they could have sought such relief and had the questions litigated by presenting them in a different form to the court for determination. [Donnell v. Wright, 147 Mo. l. c. 647.]

While in the case at bar the main controversy and in fact the cause of action as stated by the plaintiff was upon the note, yet the deed of trust which was given as security for the note was clearly connected with the subject of the cause of action upon the note as stated by

the plaintiff in his petition, and while it may be said that the deed of trust was merely incidental in this proceeding to the main controversy, yet it is so clearly connected with the subject of the cause of action that in our opinion there can be no question as to the right of the respondents to present such equitable defenses as they may have growing out of the sale under the deed of trust to satisfy the payment of the note upon which this suit was brought. We are, therefore, of the opinion that section 564, Revised Statutes 1899, as heretofore indicated, which requires suits for the possession of real estate or whereby the title thereto may be affected to be brought in the county wherein such real estate lies, does not apply to actions in which the question of title is merely incidental to the main controversy. [Royston v. Royston, 21 Ga. 161.]

In Massie v. Watts, 6 Cranch l. c. 158, Chief Justice MARSHALL, in discussing the subject of jurisdiction, announced this principle. He said: "But where the question changes its character, where the defendant in the original action is liable to the plaintiff, either in consequence of contract, or as trustee, or as the holder of a legal title acquired by any species of *mala fides* practiced on the plaintiff, the principles of equity give a court jurisdiction wherever the person may be found, and the circumstance that a question of title may be involved in the inquiry, and may even constitute the essential point on which the case depends, does not seem sufficient to arrest that jurisdiction."

In Olney v. Eaton, 66 Mo. 563, which was a case to enforce a vendor's lien, the answer consisted of a general denial and pleaded specifically that plaintiff agreed to receive lands in the State of Kansas as part payment of the purchase money, and in pursuance of that agreement tendered a deed and prayed for a specific performance of the contract. The reply in that case admitted the contract for the purchase of the Kansas

lands, but averred it was a separate and distinct transaction having no connection with the first. While the court found that the two contracts were separate transactions, yet it was expressly held that if the finding had been the other way, that the transactions were to be considered together as an entirety, then the judgment should have been for the defendant, notwithstanding the fact that the land was located in another State. The rule was announced in that case that "decrees of courts of equity do, indeed, primarily and properly act *in personam,* and, at most, collaterally only *in rem;* hence, the specific performance of a contract for the sale of lands lying in a foreign country, will be decreed in equity, whenever the party is a resident within the jurisdiction of the court."

## II.

This brings us to the consideration of the decree finally rendered in this cause. It is the final decree that constitutes the judgment in this cause and in which the rights of the parties are declared and is the only one with which we have to deal; therefore, we will omit any reference to the interlocutory decree. In our opinion this decree is erroneous. It will be noted that the chancellor sought to ascertain the value of the land and from the testimony heard, place a certain value upon it. Then follows the recitals in the final decree that the plaintiff may and shall keep the land in controversy at its reasonable value on the date of said trustee's sale, which the court found and now finds to be $1,350, and credit defendants therewith on their said indebtedness to plaintiff. This decree is illogical and was doubtless based upon the theory that the land had been sacrificed at the sale; however, it certainly cannot be the law that the chancellor can fix the price upon the land upon which a deed of trust is given and compel the plaintiff to take it at the price so fixed. The plaintiff in this

case has the right upon his own accord to bid upon this land at the sale and if such sale was made in accordance with the provisions of the deed of trust, not surrounded by any conditions which would operate a fraud upon the rights of the defendants, then he has the right to keep the land at the price bid for it. If the sale was unfair and the defendants misled by the false and fraudulent representations of the plaintiff to not attend the sale or have some one to represent them, and to permit such sale to stand would operate fraud upon the rights of the defendants, then the chancellor should set it aside, but we know of no rule in equity which would authorize the chancellor to fix the price upon land held as security under a deed of trust, to say by a decree that you must take this land at this price. The purchase of land in cases of this character must be entirely voluntary, and if the purchase and sale are valid the party purchasing is entitled to hold the land; if it is invalid by reason of any informality in conducting the sale or by any fraud perpetrated by the purchaser, then it ought to be set aside, but we are unwilling to say that a party holding a deed of trust can be by a decree of a court of equity compelled to pay any fixed sum for the land upon which the deed of trust is given.

### III.

It is next insisted that, under all the evidence elicited at the trial, the finding upon the issues as presented by the equitable defense in the answer should have been for the plaintiff. We repeat that we shall not undertake to review all the testimony introduced upon the issues as presented by the answer. Until there is a decree which clearly sets forth the finding of the court that the sale of this land was either fraudulent or not fraudulent there is no necessity for doing so. The law is well settled in this State as well as in other jurisdictions, where it is sought to set aside a sale upon the

ground of false representations or fraud, that the burden of proof rests with the party charging such fraud and false representations, and if upon the retrial of this cause the chancellor finds that this sale was unfair and surrounded by a state of facts which shows to the reasonable satisfaction of the chancellor that to permit it to stand would work a fraud upon the rights of the defendants, then such sale should be set aside and the parties placed in the position they occupied before any sale took place, or at the election of the defendants the sale may be set aside upon condition that the amount of plaintiff's debt together with interest be fully paid and satisfied.

## IV.

Appellant complains at the admission of testimony respecting the value of the land embraced in the sale under the deed of trust. It is earnestly insisted that the court erroneously admitted testimony showing the value of the land in dispute by comparison with the value of other property. It is sufficient to say upon this proposition that the law is well settled in this State upon that subject, and while the value or selling price of similar property may be taken into consideration in determining the value of the piece of property in litigation, it is equally true that the location and character of such property should be similar and the sales of such other property should at least be reasonably near in point of time to the time at which the inquiry of the value of the property in dispute is directed.

For the reasons as herein indicated the decree and judgment should be reversed and the cause remanded, and it is so ordered.

All concur.